UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MERCHANTS BANK OF INDIANA,<br><br>Merchants,<br><br>v.<br><br>CYPRESSWOOD TX REALTY, LLC;<br>CRESCENT MOON DR HEALTHCARE, LLC;<br>FRIO HOSPITAL DISTRICT;<br>eCAPITAL HEALTHCARE CORP; and<br>SAMUEL GOLDNER,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Case No.: 4:24-cv-03964 (ahb) |

## FIRST AMENDED COMPLAINT FOR CONTINUED APPOINTMENT OF RECEIVER, ENFORCEMENT OF PROMISSORY NOTE AND GUARANTY, AND FORECLOSURE ON DEED OF TRUST

Plaintiff, Merchants Bank of Indiana ("Merchants"), submits the following Amended Complaint for Continued Appointment of Receiver, Enforcement of Promissory Note and Guaranty, and Foreclosure on Deed of Trust:

### NATURE OF THE ACTION

1. The purpose of this action is (A) to continue the appointment of Michael Flanagan of Flanagan & Associates to serve as a receiver over certain loan collateral of Merchants that includes a 202-bed licensed skilled nursing facility located at 10851 Crescent Moon Drive, Houston, Texas 77064; (B) obtain a money judgment against Cypresswood TX Realty, LLC pursuant to the Promissory Note; (C) obtain a money judgment against Samuel Goldner pursuant to his Continuing Limited Guaranty; and (D) obtain a declaratory judgment that Merchants is entitled to foreclose the Deed of Trust.

2. Merchants made the subject loan, which matured in December of 2023, to Cypresswood TX Realty, LLC, which is the owner of the facility and which owes Merchants approximately $9,500,000. Samuel Goldner, the sole personal guarantor of the subject loan, has refused, and continues to refuse, to satisfy Cypresswood's outstanding debt as required by his Guaranty.

3. The day-to-day manager of the facility, Crescent Moon Dr. Healthcare, LLC, has threatened to cease management of the facility due to financial shortfalls associated with the operations, thereby jeopardizing the viability of the business.

4. The appointment of Mr. Flanagan as receiver is necessary to protect the facility's residents and to preserve the value of Merchants' loan collateral.

## PARTIES

5. Merchants is an Indiana-chartered bank with its principal place of business at 410 Monon Blvd., Carmel, Indiana 46032. Merchants' businesses include commercial lending and traditional community banking operations with six depository branches located in Indiana (in Carmel, Indianapolis, Lynn, Spartanburg, and Richmond). Because Merchants is incorporated in Indiana and its principal place of business is in Indiana, Merchants is a citizen of Indiana.

6. Cypresswood TX Realty, LLC ("Cypresswood") is a limited liability company formed under the laws of Texas and is comprised of a single member, Cypresswood TX Realty Holdings, LLC ("Cypresswood Holdings"). Cypresswood has already appeared in this lawsuit. Dkt# 34. Merchants does not, by this First Amended Complaint, make Cypresswood Holdings a party-Defendant to this lawsuit.

7. Cypresswood Holdings is a limited liability company formed under the laws of Delaware. Cypresswood Holdings has six members: Samuel Goldner, Leslie Kahan, Chana Kahan, Susan Goldner, Otto Weingarten, and SG Cypresswood Holdings, LLC ("SG Holdings").

8. Samuel Goldner resides at 22 Herrick Drive, Lawrence, NY 11559. Samuel Goldner resides, votes, and has a driver's license in the state of New York. Samuel Goldner is domiciled in the state of New York. By virtue of this First Amended Complaint, Samuel Goldner is made a party-Defendant to this lawsuit and against whom Merchants seeks affirmative relief.

9. Leslie Kahan resides at 1531 54th Street, Brooklyn, NY 11219. Leslie Kahan resides, votes, and has a driver's license in the state of New York. Leslie Kahan is domiciled in the state of New York. Merchants does not, by this First Amended Complaint, make Leslie Kahan a party-Defendant to this lawsuit.

10. Chana Kahan resides at 1531 54th Street, Brooklyn, NY 11219. Chana Kahan resides, votes, and has a driver's license in the state of New York. Chana Kahan is domiciled in the state of New York. Merchants does not, by this First Amended Complaint, make Chana Kahan a party-Defendant to this lawsuit.

11. Susan Goldner resides at 22 Herrick Drive, Lawrence, NY 11559. Susan Goldner resides, votes, and has a driver's license in the state of New York. Susan Goldner is domiciled in the state of New York. Merchants does not, by this First Amended Complaint, make Susan Goldner a party-Defendant to this lawsuit.

12. Otto Weingarten resides at 1661 53rd St., Brooklyn, NY 11204. Otto Weingarten resides, votes, and has a driver's license in the state of New York. Otto Weingarten is domiciled in the state of New York. Merchants does not, by this First Amended Complaint, make Otto Weingarten a party-Defendant to this lawsuit.

13. SG Holdings is a limited liability company formed under the laws of Ohio. SG Holdings has a single member, the Goldner Family Irrevocable Trust (the "Goldner Trust"). Merchants does not, by this First Amended Complaint, make SG Holdings a party-Defendant to this lawsuit.

14. The Goldner Trust was formed in Delaware and has two trustees, Susan Goldner (above) and the Bryn Mawr Trust Company of Delaware ("BMTCD"). *See Ronald Alexander Leblanc Trust v. Ransom*, 276 F. Supp. 647, 651 (S.D. Tex. 2003) ("For purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of the trustee or trustees."). Merchants does not, by this First Amended Complaint, make the Goldner Trust a party-Defendant to this lawsuit.

15. BMTCD is a Delaware corporation with its principal place of business in Delaware. Merchants does not, by this First Amended Complaint, make BMTCD a party-Defendant to this lawsuit.

16. Crescent Moon Dr. Healthcare, LLC ("Crescent") is a Delaware limited liability company and is comprised of a single member, VHS Tex OpCo Holdings, LLC. Crescent has already appeared in this lawsuit. Dkt# 50.

17. VHS Tex OpCo Holdings, LLC is a Delaware limited liability company and is comprised of a single member, William Miller. Merchants does not, by this First Amended Complaint, make VHS Tex OpCo Holdings a party-Defendant to this lawsuit.

18. William Miller resides and is domiciled in the State of Washington. Merchants does not, by this First Amended Complaint, make William Miller a party-Defendant to this lawsuit.

19. Frio Health District ("Frio") is a Texas governmental entity established pursuant to Chapter 1030 of the Texas Special District and Local Laws Code.. Frio has already appeared in this lawsuit. Dkt# 26.

20. eCapital Healthcare Corp. ("eCap") is a Delaware corporation with its principal place of business in Florida. eCap has already appeared in this lawsuit. [Dkt# 44]. (Cypresswood, Crescent, Frio, eCap and Samuel Goldner collectively are the "Defendants" with respect to each Defendant Merchants seeks the relief, or as joined as a party to this lawsuit, as more specifically stated in this First Amended Complaint).

## JURISDICTION AND VENUE

21. Based on the foregoing, for purposes of diversity jurisdiction, Merchants is a citizen of Indiana, Cypresswood is a citizen of New York and Delaware, Crescent is a citizen of Washington, Frio is a citizen of Texas, eCap is a citizen of Delaware and Florida, and Samuel Goldman is a citizen of New York.

22. This Court is one of proper venue, because the property at issue involves commercial real estate, and a 202-bed, multi-million dollar skilled nursing facility operating on that real estate, located in Houston, Texas.

23. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because this action is between a citizen of Indiana, on the one hand, and citizens of New York, Delaware, Washington, Texas, and Florida, on the other hand, and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

**STATEMENT OF FACTS**

**Loan, Liens and Security Interests**

24. On May 4, 2021, Merchants made a loan (the "Loan") to Cypresswood regarding commercial real estate, together with the improvements and fixtures thereon, located at 10851 Crescent Moon Drive, Houston, Harris County, Texas 77064 (the "Real Estate") and the 202-bed licensed skilled nursing facility known as the Fallbrook Rehabilitation and Care Center operating on the Real Estate (the "Facility") (the Real Estate and Facility may collectively be referred to as the "Property"). Affidavit of Robert Burtner ("Burtner Aff."), ¶ 4, attached hereto as Exhibit 1.

25. As of May 4, 2021, Cypresswood owned, and it continues to own, the Real Estate, which is more particularly described in Exhibit A attached to the Burtner Affidavit, ¶5.

26. On or about May 4, 2021, Merchants and Cypresswood entered into a Loan Agreement. Burtner Aff., ¶ 6, Exh. B.

27. On or about May 4, 2021, Cypresswood executed a Promissory Note in the principal amount of $25,000,000.00 payable to Merchants (the "Note"). Burtner Aff., ¶ 7, Exh. C.

28. The Note is in default for, among other things, Cypresswood's failure to make payments when due, including the failure to pay the Note in full upon its maturity on December 10, 2023 (the "Loan Default"). Burtner Aff., ¶ 8.

29. Samuel Goldner ("Goldner"), the sole personal guarantor of the Loan by virtue of a Continuing Limited Guaranty effective as of May 4, 2021 (the "Guaranty"), has refused, and continues to refuse, to satisfy Cypresswood's outstanding debt. Burtner Aff., ¶ 36, Exh. Y.

30. As of September 30, 2024, the outstanding principal balance under the Note was $8,300,794.64, the accrued and unpaid interest, including default interest, equaled $989,303.36,

and the Exit Fee equaled $249,023.00, for a total amount due and payable of $9,539,121.00, plus attorneys' fees and litigation expenses incurred.  Burtner Aff., ¶ 9.

31. As of September 30, 2024, interest continued to accrue at the default rate of $3,191.19 per day.  Burtner Aff., ¶ 10.

32. In order to secure and collateralize the Note, on or about May 4, 2021, Cypresswood executed and delivered to Merchants a Real Estate Deed of Trust, Security Agreement and Assignment of Leases and Fixture Filing (the "Deed of Trust"), which was recorded against the Real Estate on May 5, 2021, in the official records of Harris County as Document No. 2021-246979.  Burtner Aff., ¶ 11, Exh. D.

33. Merchants further perfected its security interest in the Real Estate by recording a UCC Financing Statement in the official public records of real property of Harris County on May 5, 2021, as Document No. 2021-246982.  Burtner Aff., ¶ 12, Exh. E.

34. In order to further secure and collateralize the Note, on or about May 4, 2021, Cypresswood executed in favor of Merchants an Assignment of Leases and Rents (the "ALR"), which was recorded against the Real Estate on May 5, 2021 in the official public records of real property of Harris County as Document 2021-246980.  Burtner Aff., ¶ 13, Exh. F.

35. Merchants further perfected its security interests granted by Cypresswood by filing with the Texas Secretary of State a UCC Financing Statement on May 5, 2021 as Document 21-0018863544.  Burtner Aff., ¶ 14, Exh. G.

36. The Loan Records reflect that, Cypresswood, as lessor, and Crescent, as lessee, entered into an Operating Lease dated July 7, 2023, pursuant to which Crescent leases the Property (the "Lease").  Burtner Aff., ¶ 15, Exh. H.

37. Cypresswood, Crescent and Merchants entered into a Subordination, Non-Disturbance and Attornment Agreement to be effective September 1, 2023 (the "SNDA"). Among other things, in the SNDA, Cypresswood and Crescent stipulated that their rights in the Property under the Lease are subject and subordinate to the interests of Merchants. Burtner Aff., ¶ 16, Exh. I.

38. Merchants, Cypresswood, Crescent and eCap entered into a Lease Payment Agreement dated September 7, 2023 (the "LPA"). Among other things, the LPA requires Crescent to make certain payments due under the Lease directly to Merchants (instead of to Cypresswood). Burtner Aff., ¶ 17, Exh. J.

39. Crescent has not made any Lease payments to Merchants under the LPA since March, 2024. Crescent has not made any of those Lease payments directly to Cypresswood, either (the "Lease Default"). Burtner Aff., ¶ 32.

40. To further secure and collateralize the Note, Crescent and Merchants executed an Operator Security Agreement (the "Crescent OSA") to be effective September 7, 2023, pursuant to which Crescent granted to Merchants a security interest in certain Collateral related to the Property and operations of the Facility (as defined in Section 1(a) of the Crescent OSA) and more particularly described in Exhibit B to the OSA (the "Collateral"). Burtner Aff., ¶ 18, Exh. K.

41. Merchants perfected certain security interests granted by Crescent in the Crescent OSA by filing with the Delaware Department of State a UCC Financing Statement on September 15, 2023 as Document 2023-6263106. Burtner Aff., ¶ 19, Exh. L.

42. Cypresswood executed in favor of Merchants a Confirmation and Amendment of Loan Documents, to be effective as of September 7, 2023, that was recorded against the Real Estate on September 28, 2023 in the official records of Harris County as Document 2023-373070 (the

8

"First Confirmation).  Among other things, the First Confirmation memorialized Cypresswood's acknowledgement of the Lease and the ALR's effectiveness with respect to the Lease.  Burtner Aff., ₱ 20, Exh. M.

43. Crescent, as sublessor, and Frio, as sublessee, entered into a Sublease Agreement dated effective as of February 1, 2024 pursuant to which Crescent subleases the Property to Frio and Frio operates the Facility (the "Sublease").  Burtner Aff., ₱ 21, Exh. N.

44. To further secure and collateralize the Note, Frio and Merchants executed an Operator Security Agreement (the "Frio OSA") to be effective February 1, 2024, pursuant to which Frio granted to Merchants a security interest in certain Collateral (as defined in Section 2 of the Frio OSA) related to the Property and the operations of the Facility.  Burtner Aff., ₱ 22, Exh. O.

45. Merchants perfected certain security interests granted by Frio in the Frio OSA by filing with the Texas Secretary of State a UCC Financing Statement on April 11, 2024 as Filing No. 24-0026713560.  Burtner Aff., ₱ 23, Exh. P.

46. To further perfect certain security interests granted by Frio in the Frio OSA, Frio, eCap, Merchants and Security State Bank ("Security") entered into a "Blocked Account Control Agreement ('Shifting Control')" on February 1, 2024 related to a bank account of Frio's at Security (the "Frio DACA").  Burtner Aff., ₱ 24, Exh. Q.

47. In connection with the Frio OSA, Frio, eCap, Merchants and Security entered into a "Blocked Account Control Agreement ('Government Receivables')" on February 1, 2024 related to a bank account of Frio's at Security (the "Frio DAISA").  Burtner Aff., ₱ 25, Exh. R.

48. To further secure and collateralize the Note, Frio and Crescent executed, in favor of Merchants, an Assignment of Management Agreement and Subordination of Management Fees (the "AMA") dated February 1, 2024.  Burtner Aff., ₱ 26, Exh. S.

49. The AMA relates to the Management Agreement entered into between Frio and Crescent dated February 1, 2024 (the "Management Agreement"), attached as Exhibit A to the AMA. Among other things, in the Management Agreement, Frio engaged Crescent to manage the Facility on Frio's behalf. Burtner Aff., ¶ 27.

50. To further perfect certain security interests granted by Crescent in the Crescent OSA and the AMA, CIBC Bank USA ("CIBC"), Crescent, eCap and Merchants entered into an Amended and Restated Deposit Account Control Agreement on February 16, 2024 related to certain of Crescent's bank accounts at CIBC (the "Crescent DACA"). Burtner Aff., ¶ 28, Exh. T.

51. In connection with the Crescent OSA and the AMA, CIBC, Crescent, eCap and Merchants entered into an Amended and Restated Deposit Account Instructions and Service Agreement on February 16, 2024 related to certain of Crescent's bank accounts at CIBC (the "Crescent DAISA"). Burtner Aff., ¶ 29, Exh. U.

52. Cypresswood, Crescent, Frio and Merchants entered into a Subordination and Attornment Agreement to be effective February 1, 2024 (the "SAA"), pursuant to which Crescent and Frio stipulated that their rights in the Property under the Lease and the Sublease are subject and subordinate to the interests of Merchants. Burtner Aff., ¶ 30, Exh. V.

53. Cypresswood, Crescent, Frio and Merchants executed a Second Confirmation and Amendment of Loan Documents, to be effective February 1, 2024, which was recorded against the Real Estate on April 10, 2024 in the official records of Harris County as Document 2024-127673 (the "Second Confirmation"). Among other things, the Second Confirmation memorialized the parties' acknowledgement of the Sublease and the Management Agreement, together with the ALR's effectiveness with respect to the Sublease. Burtner Aff., ¶ 31, Exh. W.

54. Crescent and eCap entered into a Credit and Security Agreement on September 12, 2023 (the "Crescent CSA") establishing a revolving line of credit for the operations of the Facility in exchange for, among other things, Crescent's grant to eCap of senior liens and security interests in, among other things, certain deposit accounts and accounts receivable defined as Collateral in Section 2.7 of the Crescent CSA (the "eCap Priority Collateral").

55. Frio and eCap entered into a Security Agreement on February 1, 2024 (the "Frio Security Agreement") modifying and amending the existing revolving line of credit for the operations of the Facility in exchange for, among other things, Frio's grant to eCap of senior liens and security interests in, among other things, certain deposit accounts and accounts receivable defined as Collateral in Section 2 of the Frio Security Agreement, which Collateral shall be included in the definition of the eCap Priority Collateral.

56. On February 1, 2024, eCap, Merchants, Cypresswood, Frio and Crescent entered into an Amended and Restated Intercreditor Agreement (the "ICA") that, among other things, articulates Merchants' and eCap's agreement that eCap's liens on the eCap Priority Collateral are senior to Merchants' liens thereon.

### Termination Notice

57. On September 4, 2024, Crescent issued to Cypresswood and Merchants a Formal Notice of Termination of Operating Lease Agreement (the "Notice"). Burtner Aff., ¶ 33, Exh. X.

58. In the Notice, Crescent seeks to terminate the Lease and the Management Agreement, and ultimately vacate the Property.

59. Crescent issued the Notice due to operational cost and expense shortfalls (the "Shortfalls") at the Facility. Crescent has concluded that its arrangement to operate the Facility

under the current terms of the Lease and Management Agreement is not economically feasible. Burtner Aff., ¶ 34.

60. Cypresswood has been either unwilling or unable to cover the Shortfalls. Burtner Aff., ¶ 35.

61. Absent funding (i.e. protective advances) by Merchants to cover the Shortfalls, the Facility is in imminent danger of closing. Burtner Aff., ¶ 40.

**Purpose of the Receivership**

62. In order to preserve and protect the viability of the collateral securing the Loan (i.e. to keep the Facility open), as well as to maintain the status quo for the patient population at the Facility, Merchants is willing and able to provide financing to a court-appointed receiver for the purpose of funding reasonable and necessary operational costs and expenses for the Property in lieu of Crescent doing so. Burtner Aff., ¶ 41.

63. Crescent has performed adequately in its role as day-to-day manager of the Facility, and Merchants thus is comfortable with Crescent continuing in that role for the receiver during a receivership. In doing so, the status quo for the patients at the Facility will be preserved. Burtner Aff., ¶ 42.

64. Merchants' ultimate objective relative to the receivership is to pursue a receiver's sale of the Property and Collateral to a new owner-lessor as soon as reasonably possible. Burtner Aff., ¶ 43.

**COUNT I: ACTION FOR RECEIVERSHIP**

65. An Event of Default (as defined in Section 10.1(a, b and bb) of the Loan Agreement) has occurred as a result of the Loan Default.

66. Pursuant to Section 11.1(e) of the Loan Agreement, Merchants has the right and power to "seek the appointment of a receiver to take possession of the [Property].…"

67. Pursuant to Section 11.6 of the Loan Agreement, Merchants is entitled to injunctive relief without the necessity of proving actual damages, "together with an action for specific performance.…"

68. Pursuant to Section 28(d) of the Deed of Trust, Merchants has the "absolute right to the appointment of a receiver over the Property and the Lease."

69. Pursuant to Section 28(e) of the Deed of Trust, Receiver is further empowered to, among other things, (a) collect rents and revenues, (b) pay operating expenses of the Property, (c) borrow funds from Merchants, and (d) generally do anything Crescent could do if Crescent were in possession of the Property.

70. The ALR, Section 9, mirrors Crescent's stipulation to Merchants' receivership rights in the Loan Agreement and the Deed of Trust.

71. Pursuant to the Crescent OSA, Section 9(a)(ii)(C), the remedies for an Event of Default include the ability of Merchants to exercise all rights and remedies afforded by law or in equity.

72. Pursuant to the Crescent OSA, Section 9(b), the remedies for an Event of Default also include the ability of Merchants to convey Collateral in the name of its designee and to assign and transfer any of the Collateral.

73. Merchants is entitled to the appointment of a receiver to assume control over the Property and the Collateral.

74. There also has been an Event of Default under the Lease, Section 17.1(a), for, among other things, the Lease Default.

75. Pursuant to the Lease, Section 17.2(a), the remedies for an Event of Default include the termination of Crescent's right of possession of the Property. Furthermore, under 17.2(b) of the Lease, Merchants, by virtue of its rights under the ALR, may, without terminating the Lease, "install…a receiver of its choice."

76. Merchants is entitled to the appointment of a receiver to displace Crescent in its capacity as lessee under the Lease, sublessor under the Sublease and manager under the Management Agreement, so that a receiver may assume Crescent's roles under the Lease, the Sublease and the Management Agreement. Merchants has not elected to terminate the Lease, the Sublease or the Management Agreement at this time.

77. Merchants has named Frio as a party to this lawsuit so that it may assert its interests in the Property and the Collateral, but Merchants does not seek to affect the rights and obligations of Frio under the Sublease or the Management Agreement. Merchants intends for the License to remain unaffected at this time.

78. The day-to-day duties of Crescent as they relate to the operations of the Facility will not be affected by the receivership at this time, as Merchants seeks from the receiver a separate sub-management agreement with Crescent for those services.

79. Merchants has named eCap as a party to this lawsuit so that it may assert its interests in the Property, if any, and the Collateral, but Merchants does not seek to affect eCap's senior lien rights in the eCap Priority Collateral.

80. Cypresswood, Crescent, and Frio have agreed that a receiver may serve without posting a bond. *See* Deed of Trust, Section 28 (d); ALR, Section 9.

81. Michael F. Flanagan is qualified to serve as receiver in this action. Attached hereto as Exhibit 2 is a true and accurate copy of the Affidavit of Proposed Receiver. This Court, by Order

signed on October 24, 2024 [Dkt# 21], has already appointed Flanagan as receiver, and Flanagan has accepted that appointment. <u>See, e.g.,</u> Oath of Receiver [Dkt# 22].

### COUNT II: THE PROMISSORY NOTE ACTION AGAINST CYPRESSWOOD

Merchants, for Count II against Cypresswood, states:

82. Merchants incorporates by reference paragraphs 1 through 64 of this First Amended Complaint as if fully restated herein.

83. On or about May 4, 2021, Cypresswood executed the Note in the original principal amount of $25,000,000.00 payable to Merchants. The Note is now in default for, among other things, Cypresswood's failure to make payments when due, including the failure to pay the Note in full upon maturity of December 10, 2023 (the "Note Default").

84. As a result of the Note Default, all of the indebtedness evidenced by the Note and remaining unpaid is due, including without limitation the entire unpaid principal balance and accrued and unpaid interest.

85. As of January 25, 2024, the outstanding principal balance under the Note was $8,900,000.00 and the accrued and unpaid interest equaled $160,852.67.

86. Upon maturity, interest began to accrue at the default rate (defined in the Note) and, as of January 25, 2024, interest continues to accrue at the rate of 3,424.03 *per diem*.

87. Pursuant to Section 4.2 of the Note, in addition to the other sums due and payable, Cypresswood owes to Merchants an Exit Fee (defined in the Note) in the amount of $267,000.00.

88. All conditions precedent to Merchants' enforcement of the Note against Cypresswood have been performed, have occurred, or have been excused.

### COUNT III: THE GUARANTY ACTION AGAINST GOLDNER

Merchants, for Count III against Goldner, states:

89. Merchants incorporates by reference paragraphs 1 through 64 of this First Amended Complaint as if fully restated herein.

90. Goldner is in default under the Guaranty for, among other things, his failure to pay the amount due under the Note following the Note Default.

91. The outstanding balance owed on the Guaranty consists of the indebtedness owed under the Note.

92. All conditions precedent to Merchants' enforcement of the Guaranty against Goldner have been performed, have occurred, or have been excused.

## COUNT IV. FORECLOSURE OF DEED OF TRUST

93. Merchants incorporates by reference paragraphs 1 through 64 of this First Amended Complaint as if fully restated herein.

94. Forbearance of foreclosure under the Deed of Trust is conditioned upon payment of the Note and compliance with the other Loan Documents. Burtner Aff., ¶ 11, Exh. D. The Note is currently in uncured default and subject to this lawsuit. By reason of the default, Merchants is entitled to foreclose the Deed of Trust, either by judicial or by non-judicial processes, insofar as the Deed of Trust encumbers the Property. *Id*. Merchants is further entitled to appraise, advertise, and sell the Property, and apply the proceeds arising from such sale to satisfy the Note securing the Deed of Trust and to exercise its remedies under the Loan Documents.

## RELIEF REQUESTED

WHEREFORE, Merchants respectfully requests the Court:

A. <u>Count I: Action for Receivership:</u> maintain the appointment of Michael F. Flanagan as receiver to (a) take and retain possession of the Property and Collateral, (b) replace Crescent as lessee under the Lease, (c) replace Crescent as sublessor under the Sublease, (d)

16

replace Crescent as manager under the Management Agreement, and (e) preserve the Property and the Collateral for the benefit of Merchants and the Facility's patients, and (f) for all other proper relief.

B. <u>Count II: The Promissory Note Action Against Cypresswood:</u> judgment in favor of Merchants and against Cypresswood with regard to the Note in the amount, as of January 25, 2024, of $9,327,852.67, consisting of the outstanding principal balance of $8,900,000.00, accrued and unpaid interest of $160,852.67, and the Exit Fee of $267,000.00; plus attorney fees and litigation expenses incurred and expected to be incurred through the entry of judgment, as well as interest that continues to accrue after January 25, 2024 at the rate of $3,424.03 *per diem*.

C. <u>Count III: The Guaranty Action Against Goldner:</u> judgment in favor of Merchants and against Goldner with regard to the Guaranty in the amount, as of January 25, 2024, of $9,327,852.67, consisting of the outstanding principal balance of $8,900,000.00, accrued and unpaid interest of $160,852.67, and the Exit Fee of $267,000.00; plus attorney fees and litigation expenses incurred and expected to be incurred through the entry of judgment, as well as interest that continues to accrue after January 25, 2024 at the rate of $3,424.03 *per diem*.

D. <u>Count IV: Foreclosure of the Deed of Trust:</u> judgment in favor of Merchants that (a) the Deed of Trust is secured by the Note, (b) the Note is in default, (c) Merchants is entitled to foreclose on the Deed of Trust, and (d) Merchants is entitled to appraise, advertise, and sell the Property by means of foreclosure due to the uncured Note Default.

E. Grant Merchants all other proper relief.

Respectfully submitted,

**DINSMORE & SHOHL LLP**

*/s/      P. Alan Sanders*
P. Alan Sanders
*Attorney-in-Charge*
Texas State Bar No. 17602100
Federal Bar No. 11847
Alan.Sanders@dinsmore.com
Telephone: (346) 293-7878
Robert L. Binz III
Texas State Bar No. 24122049
Federal Bar No. 3882935
Robert.Binz@dinsmore.com
Telephone: (346) 293-7854
JPMorgan Chase Tower
600 Travis Street, Suite 7350
Houston, TX 77002

*AND*

John D. Waller (pro hac vice) [Dkt# 11]
Federal Bar No. 17600-46
John.Waller@dinsmore.com
David W. Patton (pro hac vice) [Dkt# 10]
Federal Bar No. 35333-82
David.Patton@dinsmore.com
One Indiana Square
211 North Pennsylvania Street
Suite 1800
Indianapolis, IN 46204
Telephone: (317) 639-6151
**ATTORNEYS FOR PLAINTIFF MERCHANTS BANK OF INDIANA**

## **CERTIFICATE OF SERVICE**

  I certify that the instrument to which this Certificate of Service is attached, together with any exhibits or attachments to that instrument, or any proposed Order(s), has been filed with and is to be served by and through the PACER – CM/ECF system, on February 11, 2025.

                */s/ P. Alan Sanders*
                P. Alan Sanders